485 F.2d 1290
 Maurice STANS and John N. Mitchell, Petitioners,
v.
Hon. Lee P. GAGLIARDI, United States District Judge, and
United States of America, Respondents.
UNITED STATES of America, Appellee,
v.
John N. MITCHELL and Maurice Stans, Defendants-Appellants.
 Nos. 326, 327, Dockets 73-2291, 73-2293.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 11, 1973.
Decided Sept. 11, 1973.
 
 Walter J. Bonner, Edward C. O'Connell, John P. Diuguid, Paul R. Dean, Richard W. Boone, Washington, D. C. (Greenhill & Speyer, New York City, Carr, Bonner, O'Connell, Kaplan, Thompson & Diuguid, and Wilkinson, Cragun & Barker, Washington, D. C., of counsel), for petitioner-appellant Stans.
 Curtis, Mallet-Prevost, Colt & Mosle, New York City (Peter Fleming, Jr., and John E. Sprizzo, New York City, of counsel), for petitioner-appellant Mitchell.
 Paul J. Curran, U. S. Atty., S. D. N. Y. (John R. Wing, James W. Rayhill, John A. Lowe, Kenneth R. Feinberg, John D. Gordon, III, Asst. U. S. Attys., of counsel), for the United States.
 Before LUMBARD, FRIENDLY and FEINBERG, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 John N. Mitchell and Maurice H. Stans, defendants to an indictment in the District Court for the Southern District of New York, ask us to vacate, by way either of appeal or of mandamus, a ruling of Judge Gagliardi, which refused to postpone the beginning of the trial from September 11 to a later day. Although counsel had indicated willingness to proceed on October 4, they urged that a later date, say in early November after conclusion of the Senate Watergate hearings, would be preferable.
 
 
 2
 Defense counsel represents that although the Government turned over many documents on July 16, these were not comprehensible until an explanation given by the Government on July 27; that discovery by the Government was not completed until August 29 (or, indeed, later), only thirteen days before the beginning of trial; that more time is needed to analyze this data; that an amended bill of particulars was filed only yesterday; that much of the time of counsel has had to be devoted to the preparation and argument of motions; and that it has been impossible to interview many potential witnesses. Even more impressively, they urge that much of the attention of the defendants since the return of the indictment has had to be devoted to inquires by the Senate Committee and the special prosecutor arising out of the Watergate incident, to testifying before the Senate Committee, and to matters relating to a multitude of civil suits and other proceedings, and that all this has made serious inroads into the time available to the defendants for consultation with counsel in preparing their defense to this indictment. Indeed, counsel tell us that if the case should go to trial this afternoon as scheduled, they will be obliged to answer "Not ready." We are convinced this representation is made in complete good faith.
 
 
 3
 Had we been in the position of the trial judge, we would have granted at least the three-week extension to October 4 that was requested. The indictment was returned only on May 10, 1973, and a trial beginning October 4 would have been well within the six months period fixed by the district court's speedy trial rules even for cases not presenting exceptional circumstances. To be sure, the six months are a maximum (except as otherwise provided in the rules) and an even speedier trial is desirable if this is consistent with proper preparation on both sides. Moreover, as we made clear in announcing the Second Circuit Rules Regarding Prompt Disposition of Criminal Cases in May, 1971, the policy of speedy trial of criminal cases, as distinguished from the constitutional requirement, is a matter of public interest as well as of the interest of defendants. On the other hand, these considerations must be carefully weighed against a defendant's claim of need for a short delay to permit proper preparation and the risk that overruling such a claim may undermine a conviction obtained after many weeks of trial.
 
 
 4
 It should scarcely be decisive against defendants' contentions that, as Judge Gagliardi observed, this is his oldest criminal case. Although the judge is to be commended for being abreast of his criminal docket, this success has no bearing on the crucial issue whether defendants can be properly prepared for a trial on September 11. Also we cannot agree with the judge's view that trial of this 46-page, 16-count indictment, one a conspiracy count, supplemented by a 60-page bill of particulars, "is a very simple case." The only reason adduced for proceeding on September 11 rather than a somewhat later date which we find at all persuasive is the desire to select a jury in the interval before resumption of the Senate Committee hearings. However, this is somewhat counterbalanced by the fact that if the trial begins before completion of the Senate hearings, now scheduled for early November, the jury will be sequestered as the Government has requested.
 
 
 5
 In a prosecution of this sort which will receive nationwide attention, it is peculiarly important that justice not only should be done but should seem to be done. A postponement of trial for a few weeks would be a small price to pay for stilling complaints, even if they were unjustified, that these defendants had not been given a fair opportunity to prepare their case and for avoiding an issue which will almost certainly continue during the trial and will be presented on appeal if defendants should be convicted. While the high positions formerly occupied by the defendants entitle them to no more consideration than is accorded the ordinary citizen, they deserve no less.
 
 
 6
 We have thought it proper to state these views so that Judge Gagliardi may again consider the matter as we hope he will. However, Judge Feinberg and I do not believe we have the power to enforce them. So far as defendants are concerned, our jurisdiction by way of appeal in criminal cases is limited to final judgments, 28 U.S.C. Sec. 1291. Not even the most liberal interpretation of the principle imparting finality to certain "collateral" intermediate orders, Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), would go so far as to include an order setting a trial date, no matter how serious the consequences for a defendant are alleged to be.
 
 
 7
 The question of our power to issue mandamus is a shade closer, but not close enough to assist the defendants. It is true that since La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), it is no longer possible to state without qualification that a court of appeals can issue mandamus only when, as had been said only seven months earlier in Parr v. United States, 351 U.S. 513, 520, 76 S.Ct. 912, 917, 100 L.Ed. 1377 (1956), on which the Government relies, "a court has exceeded or refused to exercise its jurisdiction." See Note, Supervisory and Advisory Mandamus under the All Writs Act, 86 Harv.L.Rev. 595, 602-07 (1973). But the later decision in Will v. United States, 389 U.S. 90, 98 n. 6, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), shows that the liberalization in supervisory mandamus wrought by La Buy is not so extensive as defendants would need in order to prevail. As we said in United States v. DiStefano, 464 F.2d 845, 850 (2 Cir. 1972):
 
 
 8
 Will v. United States, 389 U.S. 90, 95, 104, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), makes plain that mere error, even gross error in a particular case, as distinguished from a calculated and repeated disregard of governing rules, does not suffice to support issuance of the writ.
 
 
 9
 Although Will was an attempt by the Government to secure mandamus in a criminal case and the decision to some extent rested on that fact, 389 U.S. at 96-98, 88 S.Ct. 269, its language forbids the use of mandamus by a court of appeals to alter, on the request of indicted defendants, a considered discretionary determination of the trial date simply because it believes a short postponement would be a much wiser course. Acceptance of defendants' view would mean that the courts of appeals would be deluged with applications for the postponement of criminal trials, with consequent delay even though few petitions were to be granted. If, on further reflection, the judge should adhere to his determination, a course we hope he will not follow, defendants, if convicted, will be able to raise the issue on appeal, where although the standard of review is strict, see United States v. Ellenbogen, 365 F. 2d 982, 985-986 (2 Cir. 1966), cert. denied, 386 U.S. 923, 87 S.Ct. 892, 17 L. Ed.2d 795 (1967); cf. Ungar v. Sarafite, 376 U.S. 575, 589, 87 S.Ct. 841, 11 L.Ed.2d 921 (1964), they will not be required to show, as they are under the circumstances of this case, a "usurpation of power," De Beers Consolidated Mines, Ltd. v. United States, 325 U.S. 212, 217, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945).
 
 
 10
 The appeals are dismissed and the petitions for mandamus are denied. In consequence the motions for a stay of the trial pending our decision have become moot.
 
 LUMBARD, Circuit Judge (dissenting):
 
 11
 I dissent. I would grant the writ of mandamus and direct the trial judge to set a trial date not earlier than November 1, 1973.
 
 
 12
 This court is not powerless, in the face of the circumstances presented to the district court, to require, that in a case of this importance, without precedent in the history of the country, adequate time be allowed for the defendants to prepare their defense to these numerous, complicated and somewhat novel charges in a 16 count, 46 page indictment.
 
 
 13
 Of even more importance than the prompt disposition of a criminal case is the requirement that the trial be a fair one so that justice may be done. This principle is of such importance that it would seriously prejudice public confidence in the administration of justice were these defendants forced to commence trial at a time when they have not had sufficient time to consult with their counsel and when their counsel manifestly have not had enough time adequately to prepare their defense, for the reasons set out in Judge Friendly's opinion. While the setting of September 11 as the trial date may have seemed reasonable on May 29, it became abundantly clear in the following weeks that the defendants and their counsel could not adequately prepare by September 11.
 
 
 14
 In my opinion, we should not be content to admonish the trial judge to do that which it is clear he should do; we should exercise our supervisory power over the administration of criminal justice to ensure proper action on the part of the trial judge. While it is true that there is no reported decision of a federal appellate court which supports this view, it is equally true that this case and all the circumstances surrounding its prosecution are unprecedented.
 
 
 15
 The supervisory power over the administration of criminal justice must be exercised when a situation crying out for its use is clearly presented. I would not construe the granting of mandamus in a case such as this as constituting any precedent for entertaining such a petition in other cases.